## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RHONDA MOORHEAD, on behalf of
herself and all others similarly situated,

      Plaintiff,           Case No.

v.                            Hon.

WALMART INC.

      Defendant.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (85633)
Kara F. Krause (P85487)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com
kara@hurwitzlaw.com

---

## **COMPLAINT AND JURY DEMAND**

Plaintiff Rhonda Moorhead ("Plaintiff"), by and through her attorneys HURWITZ LAW PLLC, individually and on behalf of all other similarly situated individuals, brings this action against Defendant Walmart Inc. ("Defendant") and hereby alleges as follows:

## INTRODUCTION

1.     This is an employee rights lawsuit precipitated by Defendant's discriminatory animus against its employees with disabilities.  Plaintiff was an exemplary employee of six years with no marks on her record.  She has long suffered from physical disability and had reasonable accommodations granted by Defendant for six years.  Suddenly, after a change in management, Defendant began publicly humiliating Plaintiff in front of customers for having a disability.  Defendant then rescinded Plaintiff's existing reasonable accommodations and placed her on a 90-day unpaid leave, calling it a "reassignment period."  Defendant then forced Plaintiff to take leave pursuant to the Family Medical Leave Act (the "FMLA"), 29 U.S.C. § 2601, *et seq*. and retaliated against her by, *inter alia*, terminating Plaintiff's employment before she returned to work in contravention of the FMLA.  While Plaintiff was on protected leave, she fortuitously checked the WalmartOne employee scheduling system and was surprised to learn she was scheduled to return to work without any prior notice.  Plaintiff called her manager, who said it was a mistake.  However, Plaintiff came to learn that Defendant has a pattern and practice of retaliating against employees who are on a protected medical leave by placing them on the work schedule without notice so that they can manufacturer terminations for "no call no show" when the employee misses work.   This practice violates the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, *et seq*. and the

FMLA. Accordingly, on behalf of herself and the Putative Class proposed herein, Plaintiff seeks statutory damages, punitive damages, costs and attorneys' fees, equitable relief, and all other appropriate relief.

## PARTIES AND JURISDICTION

2.      Individual and representative Plaintiff Rhonda Moorhead is a resident of Saline, Michigan, which is in the County of Washtenaw.

3.      Defendant is foreign profit corporation that is headquartered in Bentonville, Arkansas, and regularly conducts business in Saline, Michigan, which is in the County of Washtenaw.

4.      This action arises under the Family Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq*. and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

5.      This Court has jurisdiction pursuant to 28 U.S.C.A. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(4) (jurisdiction over civil rights claims).  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims.

6.      Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391, as it is the district where the Defendant regularly conducts business and where the events giving rise to Plaintiff's claims took place.

7.     The facts and unlawful employment practices within the meaning of the FMLA and ADA giving rise to this Complaint occurred within the Eastern District of Michigan.

8.     Defendant is an employer and Plaintiff was its employee at all relevant times within the meaning of the FMLA and ADA.

## FACTUAL ALLEGATIONS

**Plaintiff's Employment With Defendant Under Ms. Trejo's Management**

9.     Plaintiff incorporates by reference herein the allegations contained in the foregoing paragraphs.

10.    At all times relevant to this Complaint, Defendant was Plaintiff's employer, and Plaintiff was Defendant's employee.

11.    Plaintiff disclosed that she was disabled and required medical restrictions during her hiring interviews with Defendant.

12.    On May 19, 2015, Defendant hired Plaintiff to work at its store located in Saline, Michigan.

13.    Defendant initially told Plaintiff it would accommodate her disability and medical restrictions.

14.    Plaintiff's first direct supervisor while working for Defendant was Julie Trejo.

15.   Ms. Trejo was aware of Plaintiff's disability and accommodated her restrictions for the duration of her time as Plaintiff's direct supervisor.

16.   Plaintiff's restrictions remained the same during the six years she worked under the management of Ms. Trejo.

17.   During these six years, Defendant told Plaintiff that she was a good worker that appreciated her work ethic.

18.   Plaintiff's performance was so exceptional that Defendant rewarded her the distinction of Employee of the Month.

19.   Plaintiff received multiple raises and bonuses.

20.   Plaintiff served as an asset in Defendant's Saline store—she was trained in multiple positions and filled different roles during her tenure.

21.   In multiple employment reviews, beginning in 2017 and concluding in 2021, Plaintiff was described as a "solid performer" who met expectations.

22.   Plaintiff never received any negative comments regarding her attendance or performance.

**Plaintiff's Employment with Defendant under Ms. Bittle's Management**

23.   In early 2021, Amber Bittle became Defendant's Store Manager and Plaintiff's direct supervisor.

24.   Plaintiff's disability and restrictions remained the same at the time Ms. Bittle became Plaintiff's direct supervisor.

25.     However, Defendant began threatening to terminate Plaintiff if she continued to follow her previously established medical accommodations.

26.     Ms. Bittle harassed Plaintiff about her medical restrictions in front of customers in condescending and accusatory tones, rendering Plaintiff humiliated.

27.     Ms. Bittle once admonished Plaintiff for carrying a plastic bag with her medical brace in it.

28.     Plaintiff experienced intense shame, humiliation, and fear because of the way Defendant treated her regarding her disability.

**Defendant Forces Plaintiff onto FMLA Leave and Retaliates Against Her**

29.     Ms. Bittle told Plaintiff that she did not have to accept her past physician's note asserting that Plaintiff had work restrictions related to her disability.

30.     On February 2, 2021, Plaintiff went to her physician, Dr. Cynthia L. Larson, and received a new note detailing Plaintiff's medical restrictions and proposed accommodations.

31.     The physician's note from Dr. Larson required no lifting over 20 pounds, use of a shopping card or handicap electrical cart to get around the store, use of a stool when needed to sit, no climbing ladders, no repetitive bending, and being able to carry water with her at all times.

32.     Ms. Bittle rejected Dr. Larson's note.

33.    Defendant directed Plaintiff to formally apply for renewed accommodations through Sedgwick, a platform that assists employees and employers with workplace conflicts.

34.    On February 4, 2021, Plaintiff filed a new accommodation request with Sedgwick.

35.    Defendant informed Plaintiff that she "would not lose her job," and that Sedgwick would "protect her job."

36.    The request was denied on February 24, 2021.

37.    Defendant notified Plaintiff through Sedgwick Claims Management Services that "there is no reasonable accommodation that would enable [her] to perform the essential functions of [her] job."

38.    The denial letter provided: "A Front End Checkout TA is required to move, lift, carry and place merchandise and supplies weighing up to 15 pounds without assistance; and reach overhead and below the knees, including bending, twisting, pulling, and stooping."

39.    Defendant asserted that, instead of allowing the accommodation Plaintiff had been afforded for her 6-year tenure, they would like to offer her an "alternative accommodation of reassignment."

40.    However, in the following line, Defendant stated that there was no suitable position available to her.

41.    Plaintiff was aware of several position vacancies in the store and asked if she could be considered for door-greeting, employee entrance, or fitting room positions.

42.    Defendant denied each of these requests without providing a justification.

43.    Defendant told Plaintiff that she would be placed on "personal leave for up to 90 days in case there [was] a change in [her] condition or medical restrictions …"

44.    Defendant called this mandatory unpaid leave a "reassignment leave claim" despite asserting that reassignment would not be possible.

45.    In reality, Plaintiff was placed on leave pursuant to the FMLA.

46.    During Plaintiff's 90-day leave, she called four different 1-800 numbers from Defendant to attempt to receive clarification on her leave and the status of her position.  These numbers included the main office, the severance line, the open-door policy line, and the ethics line.

47.    Each time Plaintiff connected with an employee of Defendant, she was told that they could not help her.

48.    During Plaintiff's 90-leave, she also requested her personnel file.

49.    When she requested her personnel file, Plaintiff was told that "no one had access to it."

50.     Plaintiff was forced to resort to searching for these documents online in Defendant's system but was only able to procure the aforementioned performance reviews.

51.     After Plaintiff's 90-day leave concluded, she checked Defendant's scheduling system, WalmartOne.

52.     Plaintiff found that on June 4, 2021, at 1:50 p.m., Ms. Bittle scheduled her to work June 5, 2021, at noon—only 22 hours before Plaintiff was supposed to report to work.

53.     The shift that Ms. Bittle scheduled for Plaintiff was for Plaintiff's position and hours prior to her leave, despite being told that this would no longer be an option.

54.     Ms. Bittle's action violated Defendant's policy that every employee must be given 24-hour notice, both verbally and on the website, when they are scheduled for a shift.

55.     Plaintiff did not receive notification that she was supposed to return to work for the same position and same number of hours she had prior to her 90-day leave.

56.     On June 4, 2021, Plaintiff promptly called Defendant and inquired if she was supposed to return to work, considering that her restrictions were still active.

57.    Plaintiff was put on hold.  When Defendant returned to the call, Plaintiff was told that she was not supposed to return to work and that she was going to be removed from the system "since her restrictions were permanent."

58.    Following the phone call, Plaintiff was still on the schedule.

59.    Plaintiff called Defendant again.

60.    Defendant told Plaintiff that management knew that she was not coming back and to not worry about the schedule.  Defendant repeated that Plaintiff would be taken off the schedule.

61.    Within hours following the second phone call, Plaintiff was still on the schedule.

62.    Plaintiff feared that she would be punished for a "no call no show," so she went into the system and reported an absence with confirmation number 184504688.

63.    After Plaintiff reported an absence, Defendant restricted her access to their scheduling system.

64.    Following this incident, Plaintiff was never contacted regarding her employment status.

65.    Defendant effectively terminated Plaintiff on July 5, 2021.

66.    Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on June 10, 2021.

67.     During the EEOC's investigation, Defendant falsely asserted that Plaintiff quit voluntarily.

68.     Plaintiff has suffered actual damages because of Defendant's violations, including loss of employment and mental anguish.

## **CLASS ACTION ALLEGATIONS**

69.     Plaintiff asserts her claim in Count One on behalf of the "FMLA Retaliation Class," defined as follows:

> **FMLA Retaliation Class:** All former Walmart employees in the State of Michigan who at the completion of a protected FMLA leave of absence were placed on the work schedule without actual notice so that they could be subsequently terminated for "no call no show" when they did not report to work.

70.     **Numerosity**.   The Putative Class is so numerous that joinder of all Class members is impracticable.  Defendant retaliates against employees in the State of Michigan who are on protected FMLA leave of absence by placing them on the work schedule without actual notice so that they could be subsequently terminated for "no call no show" when they don't report to work.  Defendant's policy violates the FMLA and discriminates pursuant to the ADA.  Upon information and belief, in excess of one hundred of Defendant's Michigan employees satisfy the definition of the Putative Class.

71.     **Typicality**.  Plaintiff's claim is typical of the members of the Putative Class.  Defendant typically retaliates against employees on protected FMLA leave

11

by placing them on the work schedule without actual notice so that they could be subsequently terminated for "no call no show."  The FMLA and ADA violations suffered by Plaintiff is typical to those suffered by other Putative Class members, and Defendant treated Plaintiff consistent with other Putative Class members in accordance with its standard policies and practices.

72.  **Adequacy**.  Plaintiff is an adequate representative of the Putative Class.  Ms. Moorhead's interests are aligned with, and are not antagonistic to, the interests of the members of the Putative Class.  Plaintiff has retained counsel competent and experienced in complex class action litigation.

73.  **Commonality**.  Common questions of law and fact exist as to all members of the Putative Class, including but not limited to:

  a. Whether Defendant violated the FMLA by failing to reinstate employees to the position of employment held by the employee when the leave commenced, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment at the expiration of protected FMLA leave.

  b. Whether Defendant violated the FMLA by manufacturing a pretextual reason to terminate employees by placing them on the

work schedule without actual notice so that they could be subsequently terminated for "no call no show;"

c.   The proper measure of damages; and

d.   The proper form of injunctive and declaratory relief.

74.   This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the Putative Class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant.  Further, adjudication of each individual Class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a part to such action, impeding their ability to protect their interests.

75.   This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds that apply generally to the Putative Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

76.   Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Classes predominate over any questions affecting only individual members of the Putative Classes, and because a class action is superior to other available methods of the fair and efficient adjudication of this litigation.  Defendant's conduct described in this Complaint

stems from common and uniform policies and practices, resulting in common violations of the FMLA and ADA.  Members of the Putative Class do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claims is small compared to the expense and burden of individual prosecution, and Plaintiff is unaware of any similar claims brought against Defendant by any members of the Putative Classes on an individual basis.  Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices.  Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

77.   Plaintiff intends to send notice to all members of the Putative Class to the extent required by Rule 23.  The names and addresses of the Putative Class members are available from Defendant's records.

## COUNT I
## RETALIATION IN VIOLATION OF
## THE FAMILY MEDICAL LEAVE ACT
### (Asserted on behalf of Plaintiff and the FMLA Retaliation Class)

78.   Plaintiff incorporates by reference herein the foregoing paragraphs and allegations.

79.   At all times relevant to this Complaint, Defendant was Plaintiff's employer.

14

80.     Plaintiff's disability qualifies as a "serious health condition," under the Family Medical Leave Act because it has involved both "inpatient care in a hospital" as well as a "continuing treatment by a health care provider."  29 U.S.C. § 2611(11).

81.     The Department of Labor regulations specifically prohibit an employer from "discriminating or retaliating against an employee or prospective employee for having exercised or attempting to exercise" his or her rights under that statute.  29 C.F.R. § 825.220(c).

82.     Plaintiff engaged in protected activity by agreeing to and being placed on protected leave as defined by the FMLA.

83.     Defendant retaliated against Plaintiff and similarly situated members of the FMLA Retaliation Class by not reinstating her employment at the expiration of her protected leave as defined by the FMLA.

84.     Defendant terminated Plaintiff and similarly situated members of the FMLA Retaliation Class employment due to the exercise of rights under the FMLA.

85.     A causal connection exists between the exercise of Plaintiff's and similarly situated members of the FMLA Retaliation Class protected rights and their termination.  "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the

15

purposes of satisfying a *prima facie* case of retaliation." *Mickey v. Zeidler tool & Die Co.*, 516 F.3d 516, 525 (6th. Cir. 2008).

86.     Defendant failed to comply with 29 U.S.C. § 2614(a)(1)(A)-(B), which states that an employee returning from medical leave has the right to "be restored by the employer to the position of employment held by the employee when the leave commenced" or "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."

87.     The proffered reason for Plaintiff's and similarly situated members of the FMLA Retaliation Class termination is pretextual.   Plaintiff and similarly situated members of the FMLA Retaliation Class were retaliated against for exercising her rights under the FMLA.

88.     Defendant's actions in violation of the FMLA were willful.

89.     As a direct and proximate result of Defendant's interference and retaliation against Plaintiff for exercising her FMLA rights, Plaintiff suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will continue to suffer in the future.

90.     As a further direct and proximate result of Defendant's violation of the FMLA, Plaintiff has been placed in financial distress and has suffered a loss of

earnings and benefits, and a loss of and impairment of her earning capacity and ability to work in the future.

## COUNT II
## FAILURE TO ACCOMMODATE AND
## DISCRIMINATION IN VIOLATION OF
## THE AMERICANS WITH DISABILITIES ACT
### (Asserted on Behalf of Plaintiff Individually)

91.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth at length herein.

92.     Plaintiff has a "disability" as defined in 42 U.S.C. § 12102(1).

93.     Plaintiff was a "qualified individual with a disability" as defined in 42 U.S.C. § 12131(2), as she had physical impairments that substantially limited her in the performance of major life activities.

94.     These impairments included but were not necessarily limited to those set forth in Dr. Larson's letters provided to Defendant, which noted Plaintiff's serious medical conditions.

95.     Despite her disability, Plaintiff was at all relevant times qualified to perform the essential functions of her job with or without reasonable accommodation.

96.     Plaintiff made numerous flexible requests for reasonable accommodations.

97.    Such accommodations would not have been unduly burdensome to Defendant.

98.    Defendant is an employer within the meaning of the ADA.

99.    Defendant knew or had reason to know of Plaintiff's disability.

100.    Defendant failed to accommodate Plaintiff, failed to engage in the interactive process required under the ADA, and otherwise subjected Plaintiff to adverse employment actions based on her disability as described above, including but not limited to failing to engage in the interactive process and then unlawfully terminating her.

101.    Defendant's treatment and termination of Plaintiff violates the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, et seq.

102.    Defendant's decision to discriminate against and ultimately discharge Plaintiff was motivated in substantial part by Plaintiff's disability and/or Defendant's assumptions and unreasonable perceptions of Plaintiff's medical condition.

103.    Defendant's actions in violation of the ADA were willful.

104.    As a direct and proximate result of Defendant's violation of the ADA, Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgement against Defendant as follows:

(A)   Determine that this action may proceed as a class action under Rule 23(b)(1), (2); and

(B)   Defclare that the aformentioned practices and actions of Defendant consistute unlawful violations of the FMLA and ADA.

(C)   Declare that Defendant acted wilfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FMLA and ADA.

(D)   Award Plaintiff compensatory, economic, and nonecomonimc damages in whatever amount Plaintiff is found to be entitled, including all lot wages and benefits, past and future, in whatever amount she is found to be entitled;

(E)   Award Plaintiff compensatory damages for monetary and nonmonetary loss in whatever amount she is found to be entitled;

(F)   Award Plaintiff exemplary and punitive damages in whatever amount she is found to be entitled;

(G)   Award Plaintiff reasonable attorneys' fees, costs, and interests; and

(H)   Award such other relief as this Court deems just and proper.

Respectfully submitted
HURWITZ LAW PLLC

*/s/ Noah S. Hurwitz*
Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489

Dated:  April 29, 2022

19

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

RHONDA MOORHEAD, on behalf of herself
and all others similarly situated,

       Plaintiff,               Case No.

v.                                   Hon.

WALMART INC.

       Defendant.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (P85633)
Kara F. Krause (85487)
HURWITZ LAW PLLC
Attorneys for Plaintiff
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 847-9489
Noah@hurwitzlaw.com
Grant@hurwitzlaw.com
Kara@hurwitzlaw.com

---

### **DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff Rhonda Moorhead, by and through her attorneys,

HURWITZ LAW PLLC, and on behalf of herself, and the Putative Class set forth,

hereby demands a trial by jury of the issues in the above-captioned cause of action.

                              Respectfully submitted
                              HURWITZ LAW PLLC

                              */s/ Noah S. Hurwitz*
                              Noah S. Hurwitz (P74063)

Grant M. Vlahopoulos (P85633)
Kara F. Krause (P85487)
*Attorneys for Plaintiff*
617 Detroit St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489

Dated: April 29, 2022